UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIM. NO. 3:CR-16-254 |
|---|---|---|
| v. | : | (Judge    ) |
| DAVID D. KLEPADLO, and<br>DAVID D. KLEPADLO &<br>ASSOCIATES, INC.<br>    Defendants | : | |

INDICTMENT

COUNT I

THE GRAND JURY CHARGES:

Introduction

At times material to this Indictment:

1. The defendant, David D. KLEPADLO (KLEPADLO), resides in Clark Summit, Pennsylvania.

2. The defendant, David D. Klepadlo & Associates, Inc. (DKA), is Pennsylvania business corporation created in 1989 with Articles of Incorporation dated March 21, 1989. DKA is a multi-disciplined civil and environmental engineering firm with a business address located in Clark Summit, Pennsylvania.

3. KLEPADLO was the owner, operator and president of DKA. KLEPADLO is certified by the Commonwealth of Pennsylvania as a waste water treatment system operator.

1

## THE CLEAN WATER ACT

4.  The Clean Water Act ("CWA"), 33 U.S.C. § 1251, et seq., is the Nation's comprehensive water pollution control statute. The purpose of the CWA is to restore and maintain the chemical, physical, and biological integrity of the Nation's water. In addition, the CWA was enacted to prevent, reduce, and eliminate water pollution in the United States and to conserve the waters of the United States for the protection and propagation of fish and aquatic life and wildlife, recreational purposes, and for the use of such waters for public drinking water, agricultural, and industrial purposes. 33 U.S.C. § 1252(a).

5.  Title 33, United States Code, Section 1311 of the CWA, prohibits the discharge of any pollutant by any person, except in compliance with provisions of the CWA, including 33 U.S.C. § 1342.

6.  The CWA defines a "person" as an individual and a corporation, 33 U.S.C. § 1362(5), and "any responsible corporate officer," 33 U.S.C. § 1319(c)(6); "discharge of a pollutant" as any addition of any pollutant to navigable waters from any point source, 33 U.S.C. § 1362(12); "pollutant" as, among other things, solid waste, sewage, sewage sludge, chemical wastes, and industrial and agricultural waste discharged into water, 33 U.S.C. § 1362(6); "navigable waters" as waters of the United States, 33 U.S.C. § 1362(7); and "point source" as any discernible, confined, and discrete conveyance from which pollutants are discharged, including any pipe, ditch, channel, conduit, and discrete fissure, 33 U.S.C. § 1362(14).

7. Title 33, United States Code, Section 1342 of the CWA authorizes the discharge of pollutants in compliance with a permit issued under the National Pollution Discharge Elimination Systems ("NPDES") by the U.S. Environmental Protection Agency ("EPA") or a federally authorized state agency, including the Pennsylvania Department of Environmental Protection ("PADEP").

8. NPDES permits authorize the discharge of pollutants into surface waters under specified conditions, and impose limits on the type and amount of pollutants that can be discharged into the waters of the United States. 33 U.S.C. § 1311(a) and 1342.

9. NPDES permits are specific to each treatment facility. They contain permit limits based on, among other things, the nature of the pollutants being treated, volume, treatment capacity, and the nature of the receiving waterway. The NPDES permits require permit holders to participate in a self-monitoring program where they must collect samples prior to discharging waste water into a receiving water, and to conduct analysis on the effluent (liquid waste or sewage) produced by the permitted facility. These permits contain both daily and weekly monitoring requirements. The permit program is based on self-monitoring by the permittee. Any failure with respect to self-monitoring affects the integrity of the regulatory program and can potentially affect human health and the environment.

10. NPDES permits spell out in detail when samples must be collected, how samples are to be handled, the type of sample to be collected, where that

3

sample must be collected and what detailed records must be kept in regard to sampling and analysis. These permits require different types of samples depending on the parameter to be tested. A "composite" sample is a collection of samples mixed together over a period of time (such as 8 hours or 24 hours) that are proportional to flow. This is done to represent how the treatment facility is functioning over a period of time. A "grab" sample is a sample taken at a specific point in time, and reflects the pollutants in the waste water at that point in time.

11. NPDES permits require the permittees to submit Discharge Monitoring Reports (DMRs) on a monthly basis to the PADEP. A Principal Executive Officer or Authorized Agent of the permittee has to sign each DMR. Each DMR contains a statement warning of criminal liability for false reporting.

### Greenfield Township Sewer Authority

12. Greenfield Township is a township located in Lackawanna County, Pennsylvania. The Greenfield Township Sewer Authority (GTSA) owns and operates a publicly owned treatment works ("POTW") that is subject to the terms of and conditions of an NPDES Permit, effective May 1, 2009 and expiring April 30, 2014. Prior to expiration of the Permit, the GTSA initiated the process for renewal of the NPDES Permit. Pursuant to custom and practice of the PADEP, all terms and conditions of the May 1, 2009 NPDES Permit held by the GTSA remain in effect throughout the renewal process.

13. Under the CWA's NPDES permit program, PADEP issued to the GTSA NPDES Permit No. PA 0061671, authorizing the GTSA to discharge pollutants from its treatment facility located in Greenfield Township, Lackawanna County, Pennsylvania, to an unnamed tributary of Dundaff Creek in Watershed 4-F, in accordance with effluent limitations, monitoring requirements, and other conditions set forth in the GTSA Permit, and in compliance with federal and state laws and regulations.

14. Dundaff Creek flows into the Tunkhannock Creek, and then into the Susquehanna River, a navigable waterway of the United States.

15. From in or about May 1, 2009 and continuing to the present time, GTSA contracted with defendants, KLEPADLO and DKA, to operate and manage GTSA's waste water treatment plant in accordance with the regulations and limitations specified in the GTSA Permit and the CWA and its regulations.

16. The GTSA Permit requires that the permittee at all times maintain in good working order, and properly operate and maintain all facilities and systems, which were installed and used by the permittee to achieve compliance with the terms and conditions of the GTSA Permit.

17. The GTSA Permit set discharge limits for pollutants, including ammonia-nitrogen ("NH3-N") and total suspended solids ("TSS"). The GTSA Permit set the discharge limit for NH3-N for two time frames. For the period from May 1 to October 31, the daily maximum concentration limit was 2.9 mg of NH3-N

per liter of effluent. For the period from November 1 to April 30, the daily maximum concentration limit was 8.7 mg of NH3-N per liter of effluent. The GTSA Permit set the discharge limit for TSS as a daily maximum concentration limit of 35 mg of TSS per liter of effluent.

18. The GTSA has both weekly and daily monitoring sample requirements. The GTSA Permit required that NH3-N be monitored and measured in an 8-hour composite sample of effluent once a week. The GTSA Permit required that TSS be monitored and measured in an 8-hour composite sample of effluent once a week. The GTSA Permit required daily grab sample requirements to monitor for pH, Dissolved Oxygen, and Total Residual Chlorine.

19. The GTSA Permit required that: samples and measurements taken for the purpose of monitoring be representative of the monitored activity; each sample and each measurement taken pursuant to the requirements of the GTSA Permit be recorded; approved test procedures for the analysis of the pollutants be used; Discharge Monitoring Reports (DMRs), which required the reporting of samples and measurements taken pursuant to the GTSA Permit, be properly completed; if the permittee monitored any pollutant using the analytical methods described in the GTSA Permit more frequently than the GTSA Permit required, the results of the monitoring be incorporated into the calculations on the DMR; properly completed DMRs be submitted to the PADEP within 28 days after the end of the monthly reporting period; and all instances of noncompliance be reported.

20. An employee of DKA, who is also a certified waste water operator, signed the GTSA DMRs as the plant operator, and KLEPADLO signed the GTSA DMRs as the Principal Executive Officer or Authorized Agent. KLEPADLO submitted the GTSA DMRs to PADEP on behalf of DKA which, in turn, was submitting them on behalf of the client, the GTSA.

### Benton-Nicholson Joint Sewer Authority

21. Benton Township is a township located in Lackawanna County, Pennsylvania. Nicholson is a Borough located in Wyoming County, Pennsylvania. The Benton-Nicholson Joint Sewer Authority (BNSA) owns and operates a publicly owned treatment works ("POTW") that is subject to the terms of and conditions of an NPDES Permit, effective May 1, 2012 and expiring April 30, 2017.

22. Under the CWA's NPDES permit program, PADEP issued to the BNSA, NPDES Permit No. PA 0064106, authorizing the BNSA to discharge pollutants from its treatment facility located in Nicholson, Wyoming County, Pennsylvania, to an unnamed tributary of South Branch Tunkhannock Creek in Watershed 4-F, in accordance with effluent limitations, monitoring requirements, and other conditions set forth in the BNSA Permit and in compliance with federal and state laws and regulations.

23. South Branch Tunkhannock Creek flows into the Susquehanna River, a navigable waterway of the United States.

24. From in or about May 1, 2012 and continuing to the present time, BNSA contracted with defendants, KLEPADLO and DKA, to operate and manage BNSA's waste water treatment plant with respect to the regulations and limitations specified in the BNSA Permit.

25. The BNSA Permit required that the permittee at all times maintain in good working order and properly operate and maintain all facilities and systems which were installed and used by the permittee to achieve compliance with the terms and conditions of the BNSA Permit.

26. The BNSA Permit set discharge limits for $NH_3$-N for two time frames. For the period from May 1 to October 31, the daily maximum concentration limit was 3.5 mg of $NH_3$-N per liter of effluent. For the period from November 1 to April 30, the daily maximum concentration limit was 10.5 mg of $NH_3$-N per liter of effluent. The BNSA Permit set the discharge limit for TSS as a daily maximum concentration limit of 35 mg of TSS per liter of effluent.

27. The BNSA has both weekly and daily monitoring sample requirements. The BNSA Permit required that $NH_3$-N be monitored and measured in an 8-hour composite sample of effluent once a week. The BNSA Permit required that TSS be monitored and measured in an 8-hour composite sample of effluent once a week. The BNSA Permit required daily grab sample requirements to monitor for pH.

28. The BNSA Permit required that: samples and measurements taken for the purpose of monitoring be representative of the monitored activity; each sample and each measurement taken pursuant to the requirements of the BNSA Permit be recorded; approved test procedures for the analysis of the pollutants be used; Discharge Monitoring Reports (DMRs), which required the reporting of samples and measurements taken pursuant to the BNSA Permit be properly completed; if the permittee monitored any pollutant using the analytical methods described in the BNSA Permit more frequently than the BNSA Permit required, the results of the monitoring be incorporated into the calculations on the DMR; properly completed DMRs be submitted to the PADEP within 28 days after the end of the monthly reporting period; and all instances of noncompliance be reported.

29. An employee of DKA, who is also a certified waste water operator, signed the BNSA DMRs as the plant operator, and KLEPADLO signed the BNSA DMRs as the Principal Executive Officer or Authorized Agent. KLEPADLO submitted the BNSA DMRs to PADEP on behalf of DKA which, in turn, was submitting them on behalf of its client, the BNSA.

## CONSPIRACY TO VIOLATE CWA

30. From at least in or about May 2012 through June 2014, in the Middle District of Pennsylvania, the defendants,

**DAVID D. KLEPADLO, and
DAVID D. KLEPADLO & ASSOCIATES, INC.,**

conspired and agreed, together and with others, both known and unknown to the grand jury, to commit an offense against the United States, that is, to:

a. knowingly violate permit conditions and limitations implementing sections in permits issued under 33 U.S.C. § 1342, in violation of 33 U.S.C. § 1319(c)(2);

b. knowingly falsify, tamper with, and render inaccurate monitoring devices and methods required to be maintained under the CWA, in violation of 33 U.S.C. § 1319(c)(4); and

c. knowingly make false statements, representations, and certifications in records, reports, and other documents filed and required to be maintained under the CWA, in violation of 33 U.S.C. § 1319 (c)(4).

### Manner and Means

It was part of the conspiracy that,

31. The defendants, KLEPADLO and DKA, and others known and unknown to the grand jury, knowing failed to properly operate and maintain the facilities and systems of treatment and control that were installed at the waste

10

water treatment plants and used to achieve compliance with the terms and conditions of the NPDES permits.

32. The defendants, and others known and unknown to the grand jury, knowingly failed to take samples and measurements for the purpose of monitoring that were representative of the monitored activity.

33. The defendants, and others known and unknown to the grand jury, knowingly made up test results and falsely reported sampling days and test results on DMRs to the PADEP for pollutants that were required to be measured and reported under GTSA and BNSA NPDES permits.

34. The defendants, and others known and unknown to the grand jury, knowingly diluted effluent samples when they believed that the measurements of pollutants in the samples exceeded the pollutant limits in the GTSA and BNSA NPDES permits.

## Overt Acts

In furtherance of the conspiracy and to accomplish its objects, the defendants and others known and unknown to the grand jury, committed the following overt acts, among others, in the Middle District of Pennsylvania and elsewhere:

    a. On or about January 21, 2014, the defendants falsely reported test results for pH levels of effluent at the GTSA on a DMR submitted to PADEP.

    b. On or about January 21, 2014, the defendants falsely reported test results for DO levels of effluent at the GTSA on a DMR submitted to PADEP.

11

c. On or about January 21, 2014, the defendants falsely reported test results for TR Chlorine levels of effluent at the GTSA on a DMR submitted to PADEP.

d. On or about January 21, 2014, the defendants falsely reported test results for NH3-N levels of effluent at the GTSA on a DMR submitted to PADEP.

e. On or about January 21, 2014, the defendants falsely reported test results for pH levels of effluent at the BNSA on a DMR submitted to PADEP.

f. On or about January 21, 2014, the defendants falsely reported test results for DO levels of effluent at the BNSA on a DMR submitted to PADEP.

g On or about January 21, 2014, the defendants falsely reported test results for TR Chlorine levels of effluent at the BNSA on a DMR submitted to PADEP.

h. On or about January 21, 2014, the defendants falsely reported test results for NH3-N levels of effluent at the BNSA on a DMR submitted to PADEP.

i. On or about February 26, 2014, the defendants falsely reported test results for pH levels of effluent at the GTSA on a DMR submitted to PADEP.

j. On or about February 26, 2014, the defendants falsely reported test results for DO levels of effluent at the GTSA on a DMR submitted to PADEP.

k. On or about February 26, 2014, the defendants falsely reported test results for TR Chlorine levels of effluent at the GTSA on a DMR submitted to PADEP.

l.  On or about February 26, 2014, the defendants falsely reported test results for NH3-N levels of effluent at the GTSA on a DMR submitted to PADEP.

m.  On or about February 25, 2014, the defendants falsely reported test results for pH levels of effluent at the BNSA on a DMR submitted to PADEP.

n.  On or about February 25, 2014, the defendants falsely reported test results for DO levels of effluent at the BNSA on a DMR submitted to PADEP.

o.  On or about February 25, 2014, the defendants falsely reported test results for TR Chlorine levels of effluent at the BNSA on a DMR submitted to PADEP.

p.  On or about February 25, 2014, the defendants falsely reported test results for NH3-N levels of effluent at the BNSA on a DMR submitted to PADEP.

All in violation of Title 18, United States Code, Section 371.

THE GRAND JURY FURTHER CHARGES:

## COUNT 2

33 United States Code, § 1319(c)(2)(A)
(Discharge in Violation of a CWA Permit)

35. The allegations contained in paragraphs 1 through 34 of this Indictment are incorporated herein.

36. Between in or about December 2013 to in or about April 2014, in the Middle District of Pennsylvania, the defendants,

**DAVID D. KLEPADLO, and
DAVID D. KLEPADLO & ASSOCIATES, INC.,**

knowingly violated and caused the violation of a permit condition of the GTSA permit issued under 33 U.S.C. § 1342, that is, the defendants knowingly violated permit conditions by failing to properly operate and maintain the GTSA treatment facility by removing the solid and sewage sludge build-up in the chlorine contact tanks; 2) failing to take the required daily grab samples for pH, DO and TRC; 3) failing to take the required weekly composite samples for CBOD5, Total Suspended Solids (TSS) and Nitrogen-Ammonia; 4) failing to take the required twice monthly composite samples for Ammonia-N, Kjeldahl-N, Nitrate-Nitrite, and Total Phosphorus; 5) failing to take representative samples of the effluent; and, 6) discharging partially untreated pollutants (fecal coliform) and raw sewage that numerically violated the permit limits.

In violation of Title 33, United States Code, Section 1319(c)(2)(A), and Title 18 United States Code, Section 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT 3

33 United States Code, § 1319(c)(2)(A)
(Discharge in Violation of a CWA Permit)

37. The allegations contained in paragraphs 1 through 34 of this Indictment are incorporated herein.

38. Between in or about December 2013 to in or about April 2014, in the Middle District of Pennsylvania, the defendants,

**DAVID D. KLEPADLO, and
DAVID D. KLEPADLO & ASSOCIATES, INC.,**

knowingly violated and caused the violation of a permit conditions of the BNSA permit issued under 33 U.S.C. § 1342, that is, the defendants knowingly violated permit conditions at the BNSA by failing to properly operate and maintain the BNSA treatment facility by removing the solid and sewage sludge build-up in the chlorine contact tanks; 2) failing to take the required daily grab samples for pH; 3) failing to take the required weekly composite samples for CBOD5, Total Suspended Solids (TSS) and Nitrogen-Ammonia; 4) failing to take the required twice monthly composite samples for Ammonia-N, Kjeldahl-N, Nitrate-Nitrite, and Total Phosphorus; 5) failing to take representative samples of the effluent; and, 6) discharging partially untreated pollutants (fecal coliform) and raw sewage that numerically violated the permit limits.

In violation of Title 33, United States Code, Section 1319(c)(2)(A), and Title 18 United States Code, Section 2.

THE GRAND JURY FURTHER CHARGES:

## COUNTS 4 through 14

33 United States Code, § 1319(c)(4)
(False Statements in Violation of CWA)

39. The allegations contained in paragraphs 1 through 34 of this Indictment are incorporated herein.

40. Between December 2013 and June 2014, the defendants submitted monthly DMRs to the PADEP representing and certifying that all weekly and daily testing of pollutants as required by the GTSA and BNSA permits were performed and the results were accurately reported.

41. On or about the dates set forth below, in the Middle District of Pennsylvania, the defendants,

**DAVID D. KLEPADLO, and
DAVID D. KLEPADLO & ASSOCIATES, INC.,**

knowingly caused false material statements, representations, and certifications to be made in records, reports, and other documents filed and required to be maintained under the CWA and the regulations promulgated thereunder, that is, the defendants knowingly caused to be reported in GTSA and BNSA DMRs submitted to the PADEP, as set forth below, false test results for the pollutants identified below, each DMR submitted constituting a separate count:

16

| COUNT | DATE SUBMITTED | DMR REPORTING PERIOD | FACILITY | POLLUTANT |
|---|---|---|---|---|
| 4 | Jan. 21, 2014 | Dec. 2013 | GTSA | pH, DO, TRC, NH3-N |
| 5 | Feb. 26, 2014 | Jan. 2014 | GTSA | pH, DO, TRC, NH3-N |
| 6 | March 25, 2014 | Feb. 2014 | GTSA | pH, DO, TRC, NH3-N |
| 7 | April 22, 2014 | March 2014 | GTSA | pH, DO, TRC, NH3-N |
| 8 | May 27, 2014 | April 2014 | GTSA | pH, DO, TRC, NH3-N |
| 9 | Jan. 21, 2014 | Dec. 2013 | BNSA | pH, DO, TR, NH3-N |
| 10 | Feb. 25, 2014 | Jan. 2014 | BNSA | pH, DO, TRC, NH3-N |
| 11 | March 25, 2014 | Feb. 2014 | BNSA | pH, DO, TRC, NH3-N |
| 12 | April 22, 2014 | March 2014 | BNSA | pH, DO, TRC, NH3-N |
| 13 | May 27, 2014 | April 2014 | BNSA | pH, DO, TRC, NH3-N |
| 14 | June 26, 2014 | May 2014 | BNSA | pH, DO, TRC, NH3-N |

All in violation of Title 33, United States Code, Section 1319(c)(4), and Title 18, United States Code, Section 2.

THE GRAND JURY FURTHER CHARGES:

## COUNT 15

18 U.S.C. § 1512(c)(2)
(Tampering with a Witness)

42. On or about August 24, 2015, in the Middle District of Pennsylvania, the defendant,

**DAVID D. KLEPADLO,**

corruptly obstructed, influenced, and impeded the investigation involving conduct in connection with the commission of Clean Water Act violations of Title 33, United States Code, §§ 1319(c)(2)(A) and 1319(c)(4), and attempted to do so.

In violation of 18 United States Code, § 1512(c)(2).

THE GRAND JURY FURTHER CHARGES:

## COUNT 16

18 U.S.C. § 1512(c)(2)
(Tampering with a Witness)

43. On or about August 31, 2015, in the Middle District of Pennsylvania, the defendant,

**DAVID D. KLEPADLO,**

corruptly obstructed, influenced, and impeded the investigation involving conduct in connection with the commission of Clean Water Act violations of Title 33, United States Code, §§ 1319(c)(2)(A) and 1319(c)(4), and attempted to do so.

In violation of 18 United States Code, § 1512(c)(2).

A TRUE BILL

PETER J. SMITH
UNITED STATES ATTORNEY

DATE: 9/6/16

By: MICHELLE OLSHEFSKI
ASSISTANT U.S. ATTORNEY

19