# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF PENNSYLVANIA

United States of America,      )
                                   )
       Plaintiff           )
                                   )
     VS.                      )      CASE NO. 3:16-CR-00254
                                   )
David D. Klepadlo,             )
                                   )
       Defendant           )
                                   )
_____ )

### TRANSCRIPT OF PROCEEDINGS - GUILTY PLEA
### BEFORE THE HONORABLE A. RICHARD CAPUTO
### WEDNESDAY, DECEMBER 19, 2018 AT 11:00 A.M.
### WILKES-BARRE, PENNSYLVANIA

**FOR THE PLAINTIFF:**

    Michelle Olshefski, AUSA
    U.S. Attorney's Office
    P.O. Box 309
    235 North Washington Avenue
    Scranton, PA  18501

**FOR THE DEFENDANT:**

    Mark B. Sheppard, Esq.
    Klehr Harrison Harvey Branzburg, LLP
    1835 Market Street
    Suite 1400
    Philadelphia, PA  19103-7505

---

### DIANA GILBRIDE, RMR, FCRR
### FEDERAL OFFICIAL COURT REPORTER
### P.O. BOX G
### SCRANTON, PA 18501-0090

1                    (11:17 a.m., convene.)

2          MS. OLSHEFSKI:  Your Honor, this is the matter of the

3   United States of America v. David D. Klepadlo and David D.

4   Klepadlo and Associates, Incorporated.  The Docket Number is

5   3-16-CR-254.  The defendant is before the Court and prepared to

6   change his previously entered not guilty plea to a plea of

7   guilty to the counts that are outlined in the written plea

8   agreement, and we're ready to proceed, your Honor.

9          THE COURT:  Mr. Klepadlo.

10         DEFT. KLEPADLO:  Klepadlo.

11         THE COURT:  Klepadlo.  You understand what's

12  happening here today?

13         DEFT. KLEPADLO:  Yes, I do, sir.

14         THE COURT:  All right.  And I have to be satisfied

15  that your plea is voluntary and you understand what it means to

16  plead guilty.  So I need to ask you some questions to be

17  satisfied that that's the case.  And I'm going to place you

18  under oath, so please raise your right hand.

19                    DEFENDANT DAVID D. KLEPADLO,

20  having been duly sworn or affirmed according to law, testified

21  as follows:

22         THE COURT:  And I take it that you're answering these

23  questions on behalf of yourself, as well as the entity?

24         DEFT. KLEPADLO:  Yes, sir.

25         THE COURT:  All right.  First of all, tell us your

name.

DEFT. KLEPADLO:  David D. Klepadlo.

THE COURT:  How old are you?

DEFT. KLEPADLO:  I'm 63.

THE COURT:  What's the extent of your education?

DEFT. KLEPADLO:  I have a Bachelor of Science degree
from Penn State University in environmental engineering.  I
have four professional licenses in the States of Pennsylvania,
New York, New Jersey, and Arizona for professional engineering.

THE COURT:  All right.  The next couple of questions
I'm asking you, please understand, they're only to do with the
requirement that I be sure that your mind is clear and you can
make decisions about what's right for you.  Have you recently
been treated for any mental illness or any kind of addiction?

DEFT. KLEPADLO:  No, sir.

THE COURT:  And are you currently under the influence
of any medicine or drug or alcohol?

DEFT. KLEPADLO:  No, sir.

THE COURT:  Your mind is clear and you can make
decisions about what's good for you?

DEFT. KLEPADLO:  Yes, sir.

THE COURT:  All right.  You did receive a copy of the
indictment?

DEFT. KLEPADLO:  Yes, sir.

THE COURT:   And you had an opportunity to review it

1  with Mr. Sheppard?

2        DEFT. KLEPADLO:  Yes, sir.

3        THE COURT:  He answered all the questions you had

4  about it?

5        DEFT. KLEPADLO:  Yes, sir.

6        THE COURT:  And you're satisfied with his advice and

7  representation?

8        DEFT. KLEPADLO:  Yes, sir.

9        THE COURT:  I take it your willingness to plead

10  guilty in this case is at least in part due to the fact that

11  you reached a plea agreement with the government?

12        DEFT. KLEPADLO:  Yes, sir.

13        THE COURT:  And did you have an opportunity to read

14  and discuss the plea agreement with Mr. Sheppard before you

15  signed it?

16        DEFT. KLEPADLO:  Yes, sir.

17        THE COURT:  And does the plea agreement contain the

18  complete understanding between you and the government?

19        DEFT. KLEPADLO:  Yes, sir.

20        THE COURT:  And you do understand the terms of the

21  plea agreement?

22        DEFT. KLEPADLO:  Yes, sir.

23        THE COURT:  Has anybody made any other or different

24  promise to you of any kind in an effort to get you to plead

25  guilty in this case?

1    DEFT. KLEPADLO:  No, sir.

2    THE COURT:  You do understand that the terms of the

3 plea agreement are simply recommendations to me.  I can reject

4 those recommendations without allowing you to withdraw your

5 plea of guilty.  And I can impose a sentence that may be more

6 severe than one you anticipated?

7    DEFT. KLEPADLO:  Yes, sir.

8    THE COURT:  Has anyone attempted in any way to force

9 you to plead guilty in this case?

10    DEFT. KLEPADLO:  No, sir.

11    THE COURT:  And are you pleading guilty of your own

12 free will because you are guilty?

13    DEFT. KLEPADLO:  Yes, sir.

14    THE COURT:  You should understand that the offenses

15 to which you are pleading guilty are felonies.  And should I

16 accept your plea you will be adjudged guilty of those offenses.

17 And that adjudication may deprive you of valuable civil rights,

18 such as the right to vote, the right to serve on a jury, the

19 right to hold public office, the right to possess any kind of a

20 firearm.  And of course, if you're not a citizen, which I have

21 no reason to believe you're not, you would be subject to

22 removal or deportation.  I simply have to tell you that.  Do

23 you understand those things?

24    DEFT. KLEPADLO:  Yes, sir.

25    THE COURT:  Okay.  In this case the maximum

1   penalty -- there are two counts that you're pleading guilty to,

2   Count 4, false statements in violation of the Clean Water Act,

3   the maximum penalty for that is two years in prison, one year.

4   Supervised release, $10,000 fine and $100 special assessment.

5           Also to Count 16, which is tampering with a witness,

6   which is a maximum of 20 years in prison, three years of

7   supervised release, $250,000 fine and a $100 special

8   assessment.  Do you understand those things?

9           DEFT. KLEPADLO:  Yes, sir.

10          THE COURT:  You will be required -- also you should

11  be advised you'll be required to give a DNA sample in

12  cooperation with the probation office as a part of this plea.

13          DEFT. KLEPADLO:  Okay.

14          THE COURT:  So far do you understand the possible

15  consequences of a guilty plea?

16          DEFT. KLEPADLO:  Yes, sir.

17          THE COURT:  Have you discussed or had an opportunity

18  to discuss the subject of sentencing with Mr. Sheppard?

19          DEFT. KLEPADLO:  Yes, sir.

20          THE COURT:  All right.  For your information the

21  sentencing process involves two things.  The Sentencing

22  Guidelines, I'm sure you've talked about those, they are what

23  they say they are.  They're advisory, a series of guidelines,

24  guideline sentences depending on what's called an offense level

25  and a criminal history category, you match those two and you

1  get a range of sentence.  It's something the judges are

2  supposed to look at in an effort to try to arrive at an

3  appropriate sentence.

4        In addition to that there's a federal statute that

5  sets forth a series of factors that are to be considered by

6  judges in arriving at sentence.  They are the nature and

7  circumstances of the offense, your personal history and

8  characteristics, the requirement that the sentence takes into

9  account the seriousness of the offense, promotes respect for

10  the law, provides just punishment.

11        It also requires that the sentence act as a

12  deterrent.  It also requires that the sentence protects the

13  public from any future crimes.  It also provides that you would

14  be afforded correctional treatment, medical care in furtherance

15  of rehabilitation essentially.  And also provides that that --

16  that statute also provides that we as judges try to sentence

17  people who have been found guilty of similar crimes and who

18  have similar records similarly.  The quest is for uniformity as

19  much as can occur.

20        And lastly, we have to be satisfied that the sentence

21  is reasonable.  Obviously I don't know your sentencing

22  guideline range, and I won't know that until there is a

23  presentence report and any objections to it resolved.  So

24  that's essentially the general picture of what goes on in

25  sentencing.  Do you have any questions about that?

1      DEFT. KLEPADLO:  No, sir.

2      THE COURT:  There is no parole in the federal system.

3 And should you be sentenced to prison you will not be released

4 on parole, do you understand that?

5      DEFT. KLEPADLO:  Yes, sir.

6      THE COURT:  All right.  Now I'm going to ask Ms.

7 Olshefski to just briefly outline some of the salient points of

8 the plea agreement.

9      MS. OLSHEFSKI:  Yes, your Honor.  Paragraph one of

10 the plea agreement indicates that the defendant -- the

11 defendants agree to plead guilty to Counts 4 and 16 of the

12 indictment.  Count 4 charges the defendants with a violation of

13 Title 33, United States Code, Section 1319(c)(4), which is

14 false statements in violation of the Clean Water Act.  The

15 maximum penalty for that offense is imprisonment for a period

16 of two years, a maximum fine of $10,000, a maximum term of

17 supervised release of one year, to be determined by the Court,

18 and which shall be served at the conclusion of and in addition

19 to any term of imprisonment, as well as the cost of

20 prosecution, imprisonment, probation or supervised release

21 ordered, the denial of certain federal benefits, and an

22 assessment in the amount of $100.

23      Count 16 charges the defendants with a violation of

24 Title 18, United States Code, Section 1512(c)(2), which is

25 tampering with a witness.  The maximum penalty for that offense

1   is imprisonment for a period of 20 years, a fine of $250,000, a

2   maximum term of supervised release of three years to be

3   determined by the Court and which shall be served at the

4   conclusion of and/or in addition to any term of imprisonment,

5   as well as the cost of prosecution, imprisonment, probation or

6   supervised release ordered, the denial of certain federal

7   benefits and an assessment in the amount of $100.

8           At the time the guilty pleas are entered the

9   defendants shall admit to the Court that the defendants are in

10  fact guilty of the offenses charged in Counts 4 and 16.  And at

11  the time of sentencing the United States will move for

12  dismissal of any remaining counts in the indictment.

13          Paragraph three of the plea agreement evidences the

14  defendant's understanding that the total maximum penalty -- the

15  total maximum possible sentence for all charges is a

16  combination of penalties described above, and that is 22 years

17  in prison and/or fines totalling $260,000, three years of

18  supervised release, the costs of prosecution, denial of certain

19  federal benefits and assessments totalling $200.

20          Paragraph 12 of the plea agreement refers to an

21  appropriate sentence recommendation.  At the time of sentencing

22  the United States may make a recommendation that it considers

23  appropriate based upon the nature and circumstances of the case

24  and the defendant's participation in the offense.  And

25  specifically reserves the right to recommend a sentence up to

and including the maximum sentence of imprisonment and fine
allowable, together with the cost of prosecution.

Paragraph 13 refers to special conditions of
probation or supervised release, which possibly could be
imposed upon the defendant, and include the defendant being
prohibited from possessing a firearm or other dangerous weapon.
The defendant may be required to make restitution if
applicable.  And the defendant, for example, may be required to
pay any fine imposed in accordance with a schedule determined
by the Court.

And paragraph 17, again, references restitution and
evidences the defendant's understanding and his agreement to
make full restitution to the extent applicable in accordance
with a schedule to be determined by the Court.

Paragraph 22 evidences the defendant's understanding
that the Court is not a party to and is not bound by this
agreement or any recommendations made by the parties.  Thus,
the Court is free to impose upon the defendants any sentence up
to including the maximum sentence of imprisonment for 22 years,
a fine of $260,000, a maximum term of supervised release of up
to three years, which shall be served at the conclusion of and
in addition to any term of imprisonment, the cost of
prosecution, denial of certain federal benefits, and
assessments totalling $200.

Paragraph 23 evidences the defendant's understanding

1  that if the Court imposes a sentence with which the defendants

2  are dissatisfied the defendants will not be permitted to

3  withdraw any guilty plea for that reason alone, nor will the

4  defendants be permitted to withdraw any plea should the Court

5  decline to follow any recommendations by any of the parties to

6  this agreement.

7         Paragraph 27 refers to the status of any professional

8  licenses that the defendant might possibly hold at this time,

9  and reads that it is further understood and agreed that the

10  status of any professional license held by the defendants is

11  not protected by this agreement and is a matter solely within

12  the discretion of the appropriate licensing authority.

13         The United States may in its discretion provide to --

14  provide any -- to any such licensing authority any document and

15  information in its possession.  This is a plea agreement that

16  has an appeal waiver, and that's found at paragraph 29, and

17  that's an appeal waiver on direct appeal only.  And paragraph

18  29 outlines for the defendant certain sections of federal law

19  which would otherwise afford the defendant the right to appeal

20  a judgment of conviction and sentence.  However, a material

21  condition of this plea agreement is that the defendant has

22  waived those rights to appeal as outlined in paragraph 29 on

23  direct appeal only.

24         Paragraph 32 indicates that the parties have reached

25  the terms and conditions of this agreement because the parties

1    agree that the terms and condition of this plea agreement meet

2    the ends of justice.  And paragraph 34 indicates that the

3    defendant agrees that the defendants have discussed this case

4    and this plea agreement in detail with the defendant's attorney

5    who has advised the defendant of the defendant's constitutional

6    and other trial and appeal rights, the nature of the charges,

7    the elements of the offenses the United States would have to

8    prove at trial, the evidence the United States would present at

9    such trial, possible defenses the defendant might have, the

10   advisory Sentencing Guidelines, and other aspects of

11   sentencing, potential losses of civil rights and privileges and

12   other possible and potential consequences of pleading guilty in

13   this case.

14          The defendants agree that the defendants are

15   satisfied with the legal services and advice provided to them

16   by their attorney, Attorney Sheppard.  And your Honor, this is

17   an agreement that has been signed by the Defendant, David D.

18   Klepadlo, individually, and David D. Klepadlo as president and

19   authorized representative of David D. Klepadlo and Associates,

20   Incorporated.  It's signed by their counsel, Attorney Mark

21   Sheppard and by myself on behalf of the United States.

22          THE COURT:  Thank you.  Regarding the appeal waiver,

23   I normally ask counsel about the appeal waiver and the quid pro

24   quo that you feel warranted your surrendering that on behalf of

25   Mr. Klepadlo.

1        MR. SHEPPARD:  Yes, your Honor.  Ms. Olshefski has

2  properly stated the terms of the plea agreement.  I've

3  explained to Mr. Klepadlo his appellate rights and his

4  agreement to waive in return for the agreement by the

5  government to withdraw the remaining charges, as well as the

6  other terms and conditions of the plea agreement.  And I am

7  satisfied that he knowingly has understood those and is willing

8  to waive those rights.

9        I've also -- I'm sorry, sir.  I've also explained

10  that if there is a claim of my own ineffectiveness at some

11  point in a collateral attack that will not in fact be waived by

12  the plea agreement.

13        THE COURT:  Now, Mr. Klepadlo, you understand the

14  waiver?  You're waiving your right to appeal a conviction and

15  the sentence?

16        DEFT. KLEPADLO:  Yes, sir.

17        THE COURT:  You understand that?  You're okay with

18  that and the explanation given by Mr. Sheppard?

19        DEFT. KLEPADLO:  Yes, sir.

20        THE COURT:  All right.  Let the record show that I'm

21  satisfied that the appeal waiver is both knowing and voluntary.

22  I'm going to ask you a lengthy question now about your right to

23  a trial.  You have a right to plead not guilty in this case, in

24  which case you'd have a right to a trial before a jury of 12 in

25  a courtroom such as this.  I would preside over that trial.  At

1  that trial you would be presumed to be innocent.  And in order

2  for you to be guilty the government would have to prove your

3  guilt beyond a reasonable doubt.  You have the right to the

4  assistance of counsel, Mr. Sheppard, in your defense, a right

5  to see and hear all of the witnesses and have them

6  cross-examined by your counsel in your defense.

7         You'd have the right on your own part not to testify

8  or put on any -- right -- you have the right on your own part

9  not to testify unless you voluntarily elected to do so.  You

10 also have the right to the issuance of subpoenas to force the

11 attendance of witnesses to testify on your behalf.  Do you

12 understand those things?

13        DEFT. KLEPADLO:  Yes, sir.

14        THE COURT:  All right.  You should further understand

15 that should you decide not to testify or put on any evidence

16 these facts cannot be used against you.  Meaning, you have a

17 right to remain silent at your trial.  The jury is instructed

18 your silence does not equal guilt.  And they're instructed that

19 that's the case.

20        Likewise, because you're protected by the presumption

21 of innocence, you don't have to prove your innocence, meaning

22 you don't have to present any evidence of your innocence.  The

23 jury is also instructed on that, that your failure to present

24 evidence is not to be taken by them as evidence of guilt.  You

25 are protected by the presumption of innocence and they are so

1  advised.

2    And in the event the government does not overcome the

3  presumption that you should be found not guilty.  That is

4  essentially what I want to convey to you, do you understand

5  that?

6    DEFT. KLEPADLO:  Yes, sir.

7    THE COURT:  Do you further understand that should I

8  accept your plea today, there will be no trial and you will

9  have waived or given up your right to a trial, as well as all

10  the rights associated with a trial that I just described to

11  you.  Do you understand that?

12    DEFT. KLEPADLO:  Yes, sir.

13    THE COURT:  All right.  I'm going to now read you the

14  elements of the offenses in these counts.  First Count 4, these

15  are the elements, and I'm going to ask you to listen carefully

16  because I'm going to ask you if you are guilty of these

17  elements.

18    First, that you knowingly made a false material

19  statement, representation or certification in any application,

20  record, report, plan or other document.  And second, that the

21  application, record, report, plan, or other document was filed

22  or required to be maintained under the Clean Water Act.  Are

23  you guilty of each of those?

24    DEFT. KLEPADLO:  Yes, sir.

25    THE COURT:  That's Count 4.  Count 16.  First, that

1  you obstructed, influenced, and/or impeded any official

2  proceeding, and second, that you acted corruptly.  Those are

3  the elements of that offense.  Are you guilty of each of those?

4          DEFT. KLEPADLO:  (Nodded.)

5          MR. SHEPPARD:  Yes?

6          DEFT. KLEPADLO:  Yes, sir.

7          THE COURT:  All right.  Now I'm going to ask Ms.

8  Olshefski to briefly outline in summary fashion the facts that

9  would meet these or satisfy these elements.  Again, I'm going

10 to ask you to listen carefully because I'm going to ask you if

11 you agree with what she said.

12         MS. OLSHEFSKI:  Your Honor, the Court should be aware

13 that the offense conduct that the government is going to place

14 on the record was reviewed by Attorney Sheppard, as well as the

15 defendant, these facts I'm going to place on the record.  If

16 this case were to proceed to trial the government would

17 establish beyond a reasonable doubt that at all times relevant

18 to the defendant's conduct the Defendant, David D. Klepadlo and

19 Associates, was a Pennsylvania business corporation created in

20 1989 with articles of incorporation dated March 21, 1989.

21         DKA, David D. Klepadlo and Associates, was a

22 multi-disciplined civil and environmental engineering firm with

23 a business address located in Clarks Summit, Pennsylvania,

24 within the Middle District of Pennsylvania.  David D. Klepadlo

25 was the owner/operator and president of DKA.  Klepadlo was

1  certified by the Commonwealth of Pennsylvania as a waste water

2  treatment system operator.

3        The conduct relevant to the instant offense occurred

4  at both the Greenfield Township Sewer Authority or GTSA, as

5  well as the Benton/Nicholson Sewer Authority or BNSA, and is

6  similar; that is, the defendant's failure to conduct required

7  compliance monitoring and sampling in accordance with permits

8  and submitting false sampling results in monthly discharge

9  monitoring reports -- those discharge monitoring reports are

10 referred to as DMRs -- to the Pennsylvania Department of

11 Environmental Protection, Pennsylvania DEP.

12        If this case were to proceed to trial the government

13 would prove beyond a reasonable doubt the defendant's failure

14 to properly operate and maintain the treatment plants in

15 accordance with the National Pollution Discharge Elimination

16 Systems, which is NPDES, that is the name of the permits that

17 are issued.

18        Specifically, the defendant submitted false sampling

19 results in monthly DMRs to the Pennsylvania DEP.  The NPDES

20 permits required a submission of monthly DMRs recording the

21 sampling results representative of the monthly discharges and

22 conducted in accordance with the permit sampling methods.

23        David D. Klepadlo submitted the monthly DMRs to the

24 Pennsylvania Department of Environmental Protection on behalf

25 of David D. Klepadlo and Associates, Inc., from December 18,

1  2013, until June 17, 2014, for both the Greenfield Township

2  Sewer Authority and the Benton/Nicholson Sewer Authority.

3          It was in or about April 2013 when the Pennsylvania

4  DEP field inspectors had concerns about the proper operation of

5  facilities contracted with the defendants.  For example, on

6  random visits to one or more of the facilities inspectors

7  rarely noticed the operator of the facility at the location.

8  And during the winter months inspectors would drive to one or

9  more of the facilities and fail to see tracks in the snow.

10          Pennsylvania DEP inspectors also observed growth

11  around discharge pipes that caused concerns and routinely

12  received complaints about foul odors emanating from one of the

13  facilities.

14          During a routine inspection on or about April 24,

15  2013, at the Greenfield Township Sewer Authority Pennsylvania

16  DEP field inspectors learned from the Defendant, David D.

17  Klepadlo, that required daily sampling of pollutants at both

18  the GTSA and the BNSA was only being done a few days a week and

19  that test results for other days were only estimated results.

20          In violation of the Pennsylvania DEP permits the

21  estimated results were the results reported on required monthly

22  DMRs submitted to the Pennsylvania DEP by the defendants for

23  both the GTSA and BNSA.  Inspectors learned that this was an

24  ongoing, continuous and repetitive course of conduct in terms

25  of how David D. Klepadlo operated the facilities he managed.

1      Pennsylvania DEP interviewed the owner and operator

2  of DKA, that being the Defendant David D. Klepadlo, on April

3  24, 2013, and those admissions would be presented to the jury.

4      David D. Klepadlo acknowledged that the GTSA permit

5  required daily monitoring for pollutants, including pH, but

6  stated that he and/or his employee only visited the plant two

7  or three times per week.  David D. Klepadlo stated that on days

8  when no one visited the facilities the sampling results were

9  estimated, because there was no reason to test daily, since the

10  results did not change much on a daily basis.

11      David D. Klepadlo stated that he did not care what

12  the permit required, that would be testified to by agents.

13  David D. Klepadlo admitted that he submitted the estimated

14  daily results to the Pennsylvania DEP on DMRs, and David D.

15  Klepadlo stated that this was a practice he had been following

16  for 20-plus years no matter what the permits required.

17      Based upon the above concerns and others, pole

18  cameras were installed at both the GTSA and BNSA for a period

19  of six months, and the results of those pole cameras would be

20  presented to the jury.  And those six months covered December

21  of 2013 through June of 2014.

22      The video surveillance at both GTSA and BNSA revealed

23  that on most days between December '13 and June of 2014 no one

24  showed up at either of the GTSA or the BNSA to perform required

25  daily testing of pollutants or to take weekly required

1  composite testing at either facility.

2          During the 116 days of clear video surveillance from

3  December 18, 2013 until June 17, 2014, an operator visited the

4  GTSA facility on only 17 occasions and collected daily grab

5  samples on only 8 of the 17 days.  On the DMRs submitted by DKA

6  it was reported that samples were collected every day.  Between

7  2013 and June of 2014 David D. Klepadlo submitted monthly DMRs

8  to the Pennsylvania Department of Environmental Protection

9  representing and certifying that all weekly and daily testing

10  of pollutants as required by the GTSA permit were performed and

11  the results were accurately recorded.

12          During a 146 clear days of video surveillance at the

13  BNSA, the Benton/Nicholson Sewer Authority, someone showed up

14  at the facility on only 66 occasions.  For the majority of

15  those days no one monitored the outfall or the treatment

16  processes.  On 80 days an operator failed to show up resulting

17  in the production of false reports, DMRs, being submitted by

18  the defendant for those months to the Pennsylvania Department

19  of Environmental Protection.

20          Specifically, as to Count 4 of the indictment on or

21  about January 21, 2014, the defendants knowingly caused a false

22  material statement, representation and certification to be made

23  in a record, report, and other document required to be

24  maintained under the Clean Water Act and the regulations

25  promulgated thereunder; that is, the defendants knowingly

1  caused a DMR report that contained false test results to be

2  filed and submitted to the Pennsylvania Department of

3  Environmental Protection regarding the Greenfield Township

4  Sewer Authority.

5         With respect to Count 16, tampering with a witness,

6  the defendant's employee, an individual by the name of Joseph

7  Sheposh, cooperated with investigators and wore a recording

8  device on multiple occasions to record conversations between

9  himself and the Defendant David Klepadlo.  During recorded

10  conversations, including August 31 of 2015, when the subject of

11  this investigation came up, David D. Klepadlo instructed

12  Sheposh to feign ignorance when questioned by the FBI.

13         David D. Klepadlo advised Sheposh to tell

14  investigators that he was instructed by a then retired DEP

15  inspector that what they were doing was okay.  For example,

16  David D. Klepadlo was recorded telling Sheposh to point

17  everything to Lenny.  Lenny is retired and EPA or the FBI won't

18  involve him.  David D. Klepadlo instructed Sheposh just tell

19  them, Yeah, I only did what Lenny told me to do.

20         David D. Klepadlo told Sheposh to repeatedly say I

21  don't recall.  David D. Klepadlo further stated, We'll just say

22  we don't recall and do the Hillary Clinton thing, you don't

23  remember, you don't recall to the best of your ability, that's

24  all.  Those are words of the defendant that will be played for

25  the jury.

1      That's a summary, Your Honor, of what the

2  government's evidence would be.

3      THE COURT:  All right.  Mr. Klepadlo, are those

4  things true?

5      MR. SHEPPARD:  Your Honor, if I may, just as Ms.

6  Olshefski said, this has been provided to us and we reviewed

7  it.  They are materially accurate.  There's a couple of

8  clarifications, however, which I think for the record ought to

9  be made.  Mr. Klepadlo is a responsible officer under the Clean

10 Water Act and is responsible and did cause to be made the

11 filing of a false statement charged in the indictment, and that

12 is what he's pleading guilty to.

13      Just for the record, his employee, Mr. Sheposh, was

14 also a certified operator, sewage treatment plant operator, who

15 in fact did sign the DMR as a certified operator, but Mr.

16 Klepadlo is the responsible officer.  David Klepadlo Associates

17 did in fact submit and cause to be submit that false statement,

18 which is why he's pleading guilty here today.  I just wanted

19 that accurately on the record.

20      MS. OLSHEFSKI:  I need to follow that up, your Honor,

21 by indicating that the defendant's own admissions indicate that

22 he knew full well that the required testing was not being done,

23 and he didn't care what the permit said and he admitted that.

24      MR. SHEPPARD:  Your Honor, that is -- that is

25 accurate that my client admitted long before these charges were

1 filed that they did not test pH every day and that he did not

2 believe that it was necessary to do so.  He admitted that a

3 year before this whole surveillance started.  So, yes, he

4 admits that and agrees with that.

5          THE COURT:  So let me understand.  The false

6 statements were made and you knew they were false?

7          DEFT. KLEPADLO:  Yes, sir.

8          THE COURT:  Is that what we're talking about?

9          MS. OLSHEFSKI:  Yes, your Honor.

10          MR. SHEPPARD:  Yes, your Honor.

11          THE COURT:  All right, fine.

12          MR. SHEPPARD:  I just wanted the record to be clear

13 in terms of the signing of certification because there was

14 another treatment --

15          THE COURT:  Okay, move on.

16          MR. SHEPPARD:  Thank you, sir.

17          THE COURT:  Yes.  I'm going to ask you now Mr.

18 Klepadlo how you plead to the charge -- charges contained in

19 Count 4 and Count 16 of the indictment, guilty or not guilty?

20          DEFT. KLEPADLO:  Guilty, your Honor.

21          THE COURT:  And on behalf of the corporation, guilty

22 or not guilty?

23          MR. SHEPPARD:  Your Honor, if may, I think the charge

24 with regard to the corporation is simply Count 4, not both

25 counts.

1    THE COURT:  Oh, okay.  I'm sorry.

2    MR. SHEPPARD:  I wanted to make that clear.

3    THE COURT:  That's a good point.  Thank you.  Count 4

4  as to the corporation.

5    DEFT. KLEPADLO:  Yes, sir.

6    THE COURT:  It's my finding in the case of the United

7  States versus David D. Klepadlo and David D. Klepadlo and

8  Associates, Inc., that both defendants are fully competent and

9  capable of entering an informed plea, and that each is aware of

10  the nature of the charges and the consequences of the plea.

11    The plea of guilty on behalf of each is knowing and

12  voluntary and supported by an independent basis in fact

13  containing each of the essential elements of the offense in

14  question.  The plea is therefore accepted as to Counts 4 and 16

15  as to David D. Klepadlo and as to Count 4 for David D. Klepadlo

16  and Associates, Inc.  And each defendant is adjudged guilty of

17  those particular offenses.

18    You heard me mention a presentence report.  There

19  will be one prepared.  You will receive a copy Mr. Klepadlo, so

20  will your counsel, Ms. Olshefski will get a copy.  You'll have

21  a chance to review it.  If there are any contents you wish to

22  object to you will do so and they will be heard and decided at

23  the time of sentencing.  Ms. Olshefski has the same

24  opportunity.

25    If there are any objections, as I said, they'll be

heard at the time of sentence. At which time, of course, after

they're resolved you'll have a chance to speak on your own

behalf, Mr. Sheppard has a chance to speak for you, you can

present anything to me by way of witness, letter, anything you

think will assist me in arriving at an appropriate sentence in

this case. Any questions about any of that?

DEFT. KLEPADLO: No, sir.

THE COURT: All right. The presentence report will

be disclosed February 13, 2019, sentencing will take place

April 12, 2019, at 11 a.m.

MS. OLSHEFSKI: Your Honor, I have a written document

titled Defendant's Acknowledgment of Rights Waived by Guilty

Plea. May I colloquy the defendant on this?

THE COURT: Sure, you may.

MS. OLSHEFSKI: Mr. Klepadlo, I'm showing you a

five-page document that is titled Defendant's Acknowledgment of

Rights Waived by Guilty Plea. Have you seen this document?

DEFT. KLEPADLO: I saw it about five minutes before

we came up here. Go ahead.

MS. OLSHEFSKI: Did you have an opportunity to go

over this with your attorney?

DEFT. KLEPADLO: Yes, I did.

MS. OLSHEFSKI: And on the last page above the

printed words David D. Klepadlo, individually, and David D.

Klepadlo as president and authorized representative of David D.

1 Klepadlo and Associates, Inc., there is a written name.  Whose

2 name is that?

3         DEFT. KLEPADLO:  It's mine.

4         MS. OLSHEFSKI:  And did you sign that today?

5         DEFT. KLEPADLO:  Yes, I did.

6         MS. OLSHEFSKI:  And did you sign it in the presence

7 of your attorney?

8         DEFT. KLEPADLO:  Yes, I did.

9         MS. OLSHEFSKI:  Now, sir, before you signed this did

10 your attorney go over this document with you?

11         DEFT. KLEPADLO:  Yes, he did.

12         MS. OLSHEFSKI:  So you understand this, this is the

13 written version of the constitutional rights that you have

14 waived by virtue of your guilty plea here today?

15         DEFT. KLEPADLO:  Yes.

16         MS. OLSHEFSKI:  Do you have any questions about this

17 document?

18         DEFT. KLEPADLO:  No.

19         MS. OLSHEFSKI:  Your Honor, I ask that this become

20 part of the record.

21         THE COURT:  Fine.

22         MR. SHEPPARD:  No objection, your Honor.

23         THE COURT:  Now, Mr. Klepadlo -- is there any reason

24 to not let him out on his own recognizance?

25         MS. OLSHEFSKI:  No, your Honor.  He understands that

he is not permitted to have any contact with any of the

government witnesses, and as long as he understands that his

release continues.

THE COURT:  Do you understand that?

DEFT. KLEPADLO:  Yes, sir.

THE COURT:  All right.

MR. SHEPPARD:  Thank you, your Honor.

THE COURT:  Thank you.

MS. OLSHEFSKI:  Thank you, your Honor.

(11:52 a.m., court adjourned.)

1       REPORTER'S CERTIFICATE

2

3       I, DIANA L. GILBRIDE, Official Court Reporter for the

4  United States District Court for the Middle District of

5  Pennsylvania, appointed pursuant to the provisions of Title 28,

6  United States Code, Section 753, do hereby certify that the

7  foregoing is a true and correct transcript of the

8  within-mentioned proceedings had in the above-mentioned and

9  numbered cause on the date or dates hereinbefore set forth; and

10  I do further certify that the foregoing transcript has been

11  prepared by me or under my supervision.

12

13

14                          /s/ Diana L. Gilbride
                            Diana L. Gilbride, RMR, FCRR
15                          Official Court Reporter

16  REPORTED BY:

17      DIANA L. GILBRIDE, RPR
        Official Court Reporter
18      United States District Court
        Middle District of Pennsylvania
19      P.O. Box G
        Scranton, PA  18501-0090
20

21      (The foregoing certificate of this transcript does not
    apply to any reproduction of the same by any means unless under
22  the direct control and/or supervision of the certifying
    reporter.)

23

24

25