# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

DAVID KLEPADLO, and
DAVID D. KLPADLO &
ASSOCIATES, INC.

    Defendants.

NO. 3:cr-16-254

(JUDGE CAPUTO)

## MEMORANDUM ORDER

Presently before me is a dispute over the appropriate United States Sentencing Guideline (U.S.S.G.) to apply in sentencing the Defendant, David Klepadlo. Klepadlo entered a plea of guilty on behalf of himself and David D. Klepadlo & Associates, Inc. (DKA), his civil and environmental engineering firm, to one count of violating 33 U.S.C. § 1319(c)(4), False Statements in Violation of the Clean Water Act (CWA), and one count of violating 18 U.S.C. § 1512(c)(2), Tampering With a Witness. (Doc. 26). The focus of this memorandum is the appropriate sentencing guideline calculation for Klepadlo's violation of § 1319(c)(4).

The CWA prohibits pollutant discharge into the navigable waters of the United States except in accordance with certain permits. 33 U.S.C. § 1311(a). Pursuant to the CWA, the Environmental Protection Agency's (EPA) National Pollutant Discharge Elimination System (NPDES) is responsible for issuing permits that place boundaries on the amount of pollutants an entity is allowed to discharge into a waterway. 33 U.S.C. § 1311(m). In accordance with the purpose of the CWA, such permits aim to ensure that our nation's navigable waters remain safe for drinking, fishing, swimming, and various other activities. Any treatment facility that discharges wastewater into a navigable river from a point source must obtain an NPDES permit. (*See id.*). Such NPDES permits are specific to the processes of the facility and describe the terms and conditions that the permit holder must comply with in order to properly treat

discharged wastewater. (*See id.*). Each permit holder participates in a self monitoring system by which he collects and tests his own samples in accordance with local requirements and submits his own Discharge Monitoring Reports (DMRs) on a prescribed basis. (*See id.*). In Pennsylvania, the Pennsylvania Department of Environmental Protection (PADEP) is responsible for administering the NPDES program. (Final Presentence Investigation Report, Doc. 45 at ¶¶ 7-8). In this case, the Greenfield Township Sewer Authority (GTSA), which was operated and managed by Klepadlo and DKA, was subject to a NPDES permit. (*See* Indictment, Doc. 1 *at* ¶¶ 13-15). The GTSA permit set discharge limits for various pollutants, including ammonia-nitrogen. (*Id.* at ¶ 17). Similarly, the Benton-Nicholson Joint Sewer Authority (BNSA), which was also operated and managed by Klepadlo and DKA, owns and operates a publicly owned treatment facility that was likewise subject to a NPDES permit. (*Id.* at ¶¶ 22-24). The BNSA permit set discharge limits for ammonia-nitrogen among other pollutants. (*Id.* ¶ 26). For over a year, Klepadlo regularly failed to take samples and measurements as prescribed by these NPDES permits, as he only visited the plants about one to three times per week. (*See* Doc. 45 at ¶ 8-13). To cover up his neglect for the daily and monthly sampling requirements, Klepadlo submitted falsified sampling results in monthly DMRs for both GTSA and BNSA. (*See id.* at ¶¶ 10-14). When confronted by authorities from the PADEP, Klepadlo acknowledged this business practice was ongoing and repetitive at both facilities. (*Id.* at ¶11).

The issue before me is whether the appropriate sentencing guideline for Klepadlo's violation of § 1319(c)(4) is U.S.S.G. § 2Q1.2, which applies to offenses that involve record keeping, tampering, and falsification regarding "hazardous or toxic substances," or U.S.S.G. § 2Q1.3, which applies to offenses that involve record keeping, tampering, and falsification with respect to "other environmental pollutants." The Final Presentence Investigation Report suggests that the applicable guideline is § 2Q1.2. Its sentencing calculation is as follows:

> Base Offense Level: The guideline for a violation of 33 U.S.C. §

2

> 1319(c)(4) is USSG § 2Q1.2 because the offense involved hazardous or toxic substances **(ammonia)**. The base level is 8. USSG § 2Q1.2(a).
>
> Specific Offense Characteristics: The offense resulted in an ongoing, continuous, or repetitive discharge, release, or emission of a hazardous or toxic substance into the environment. Six levels are added. USSG § 2Q1.2(b)(1)(A).
>
> Specific Offense Characteristics: The offense involved transportation, treatment, storage, or disposal without a permit or in violation of a permit. Four levels are added. USSG § 2Q1.2(b)(4).

(*Id.* at ¶¶ 24-26) (emphasis added).

On the other hand, Klepadlo argues that the applicable sentencing guideline is 2Q1.3 because

> Mr. Klepadlo's Clean Water Act conviction relates to the operation of two small, community-owned wastewater treatment plants with no industrial users. They both receive typical household sewage–and do not receive manufacturing or toxic wastes. Thus, § 2Q1.3 is the more appropriate guideline offense based on Mr. Klepadlo's offense conviction.

(Def. Sentencing Memo. at 10). Klepadlo further contends, contrary to the Government's position, ammonia is not a hazardous substance. (*Id.* at 11). Instead, he alleges that the Indictment properly characterizes "ammonia-nitrogen" as a "pollutant under the CWA" to demonstrate that § 2Q1.2 is not appropriate. (*Id.*).

The applicable sentencing guideline for Klepadlo's violation of § 1319(c)(4) is § 2Q1.2, because he falsified record keeping documents, DMRs, that required him to test for ammonia, a substance designated as "hazardous" by the relevant statutes and regulations. As explained above, Klepadlo routinely failed to meet the daily and monthly sampling requirements set forth in the NPDES permits for GTSA and BNSA. (*Id.* at ¶ 10). The Indictment explains that the NPDES permits for these treatment facilities set specific levels for pollutant discharge, including "ammonia-nitrogen." (Doc. 1 at ¶ 17, 26). This chemical compound is a measure of the amount of ammonia commonly found in wastewater. *See* ENVTL. PROTECTION AGENCY, 78 FR 52192, Final Aquatic Life Ambient Water Quality Criteria For Ammonia—Freshwater 2013, *available at https://www.govinfo.gov/content/pkg/FR-2013-08-22/pdf/2013-20307.pdf* (explaining that ammonia is a constituent of nitrogen pollution that exists in aquatic

environments). The EPA created a list of all toxic or hazardous substances according to the definition found in the Comprehensive Environmental Response Compensation and Liability Act (CERCLA). *See* 40 C.F.R. § 302.4. The Clean Water Act incorporates the listing of ammonia as a "hazardous" substance under 33 U.S.C. § 1321(b)(2).

Klepadlo argues that "ammonia-nitrogen" is a pollutant as stated in the Indictment. (*See* Def. Sentencing Memo. at 11; Doc. 1 ¶ 17). The type of substance, however, is crucial to determining whether § 2Q1.2 or § 2Q1.3 is appropriate. *See* U.S.S.G. § 2Q1.2 n.3 (stating that § 2Q1.2 "applies to offenses involving pesticides or substances designated toxic or hazardous at the time of the offense by statute or regulation . . . such as . . . the designation of hazardous substances under the Comprehensive Environmental Response, Compensation and Liability Act (e.g., 42 U.S.C. § 9601(14)) . . ."); U.S.S.G. § 2Q1.3 n.5 (explaining that § 2Q1.3 "applies to substances which are not pesticides and are not designated as hazardous or toxic."). The Indictment's reference to ammonia-nitrogen as a "pollutant" does not preclude me from properly treating it in accordance with its listing under 40 C.F.R. § 302.4 as a "hazardous substance" in determining the applicable guideline.

Klepadlo alleges that CERCLA's designation of ammonia as a hazardous substance "is not controlling or instructive," because "[a]mmonia is designated as hazardous under CERCLA for reasons inapplicable to Mr. Klepadlo's offense of conviction." (Def. Sentencing Memo at 11 n.4). To bolster this argument, Klepadlo explains that "ammonia-nitrogen is a naturally occurring component present even in properly treated sewage," "every wastewater treatment plant in the country is permitted to release ammonia as a component of the discharge," and 33 U.S.C. § 1362 includes sewage and its component parts in the definition of a "pollutant." (*Id.* at 11). While it may be the case that ammonia-nitrogen is found in sewage at some level, the NPDES permits set specific limitations on the amount of ammonia-nitrogen discharge allowed at GTSA and BNSA to ensure that these facilities operate in compliance with the CWA. (Doc. 1 at ¶ 17, 26).

4

Klepadlo further explains that a number of courts have applied § 2Q1.3 in cases involving the wrongful dumping of sewage and sewage treatment into navigable waterways. *See United States v. W. Indies Transp., Inc.*, 127 F.3d 299 (3d Cir. 1997) (stating that § 2Q1.3 was the applicable sentencing guideline where defendants discharged raw sewage into navigable waters); *United States v. Kuhn*, 345 F.3d 431 (6th Cir. 2003) (same); *United States v. Cooper*, 173 F.3d 1192 (9th Cir. 1999) (same); *United States v. Strandquist*, 993 F.2d 395 (4th Cir. 1993) (same); *United States v. Irby*, 944 F.2d 902 (4th Cir. 1991) (same); *United States v. Morris*, 6:13-cr-03002 (W.D. Mo., filed Jan. 22, 2013) (same). This authority, however, is irrelevant to the determination at hand. The issue, here, turns on the appropriate sentencing guideline to apply where the defendant falsified records concerning the management of a toxic or hazardous substance, *i.e.* ammonia-nitrogen, not cases where the defendant illegally discharged various pollutants, *i.e.* sewage.

Klepadlo does cite two cases from the Northern District of Indiana that applied § 2Q1.3 where the defendant falsely reported levels of toxic or hazardous substances in violation of a NPDES permit. *See United States v. Olson*, 2:12-cr-00045 (N.D. Ind., filed Mar. 20, 2012) (applying § 2Q1.3 where the defendant falsely reported chlorine levels); *United States v. Corn*, 3:09-cr-00061 (N.D. Ind., filed June 5, 2009) (applying § 2Q1.3 where the defendant falsified sampling results to conceal the discharge of ammonia in excess of a facility's permit limits). In response, the government points to a number of federal cases and recent prosecutions in Pennsylvania where the court applied § 2Q1.2 in situations where the defendant either discharged wastewater containing toxic or hazardous substances or tampered with the required monitoring method for certain toxic or hazardous substances. *See United States v. Andrew Manganas*, No. 1:16-cr-209 (M.D Pa., filed July 7, 27, 2016) (applying § 2Q1.2 where the defendant illegally discharged paint that contained lead into navigable waters); *United States v. Brozena*, 2:15-cr-00595 (E.D. Pa., filed Dec. 16, 2015) (applying § 2Q1.2 where the operator of a chicken processing plant failed to comply with the

requisite level of ammonia-nitrogen permitted by the facility's NPDES permit, falsified reports of ammonia-nitrogen levels, and discharged wastewater containing ammonia-nitrogen into navigable waters); *United States v. Crafton*, 2:15-cr-00358-1 (E.D. Pa., filed Aug. 3, 2015) (applying § 2Q1.2 where the defendant falsely reported and tampered with test results for chlorine, dissolved oxygen, and pH at a wastewater treatment plant for Buckingham Valley Nursing Center); *United States v. King*, 915 F. Supp. 244, 248 (D. Kan. 1996) (stating that § 2Q1.2 was more appropriate than § 2Q1.3 where the defendant knowingly introduced methyl acrylate into a publicly owned treatment facility); *United States v. Van Loben Sels*, 198 F.3d 1161 (9th Cir. 1999) (applying § 2Q1.2 where the defendant discharged oily wastewater containing "hazardous levels of benzene").

The appropriate sentencing guideline is § 2Q1.2, because Klepadlo falsified DMRs by recording inaccurate levels of ammonia, a hazardous substance under the CWA. Under U.S.S.G. 1B1.2(a), the appropriate guideline section applicable to the offense of conviction is "the offense conduct charged in the count of the indictment or information of which the defendant was convicted." Here, Klepadlo was charged under 33 U.S.C. § 1319(c)(4), which prohibits "mak[ing] any false material statements, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained" under the Water Pollution Prevention and Control Chapter of the Clean Water Act. (*See* Doc. 45 at 1).

Section 2Q1.2 contains two subsections that deal with recordkeeping violations:

> § 2Q1.2(b)(5)
> (5) If a recordkeeping offense reflected an effort to conceal a substantive environmental offense, use the offense level for the substantive offense."
>
> § 2Q1.2(b)(6)
> (6) If the offense involved a simple recordkeeping or reporting violation, decrease by 2 levels.

Klepadlo's conduct falls under subsection § 2Q1.2(b)(5), because he did not simply commit a "recordkeeping or reporting violation," as his actions reflect a conscious

6

effort to conceal" his neglect for the dictates of the NPDES permits. For over a year, he failed to operate and manage GTSA and BNSA. (*See* Doc. 45 at ¶ 8-13). Klepadlo only visited each facility a few times per week, even though the NPDES permit for each facility required daily testing of various pollutants. (*Id.* at ¶ 10). PADEP inspectors reported seeing "growth around discharge pipes that caused concern, and routinely received complaints about foul odors emanating from of the facilities." (*Id.* at ¶¶ 9). To hide his mismanagement and infrequent visits, Klepadlo estimated results on DMRs, while simultaneously certifying that all pollutant samples were accurately tested and reported in compliance with the NPDES permits. (*See id.* at ¶¶ 10-14). At one point, Klepadlo even claimed that the "the sampling results were 'estimated' because 'there is no reason to test daily' since the results did not change much daily." (*Id.* at ¶ 11). Thus, the applicable base level for his violation of § 1319(c)(4) is 8.

| | |
|---|---|
| October 9, 2019 <br> Date | /s/ A. Richard Caputo <br> A. Richard Caputo <br> United States District Judge |

7